IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

Civil Action No. 1:25-cv-

ELLIS ATHANAS,

    Plaintiff,

v.

OFFICER ALEJANDRO PEREZ, a Lee County Sheriff Deputy, in his individual capacity,
OFFICER LOUIS SCOWDEN, a Lee County Sheriff Deputy, in his individual capacity,

    Defendants.
_____

COMPLAINT AND JURY DEMAND
_____

Plaintiff Ellis Athanas, by and through his attorneys Kevin Mehr and Tyler Jolly of Mehr Jolly, PLLC, respectfully alleges for this Complaint and Jury Demand as follows:

PARTIES:

1. Plaintiff, was at all times mentioned a resident of Ft. Meyers, Florida.

2. Defendant Alejandro Perez is and was at all times mentioned a police officer employed by the Lee County Florida Sheriff Department.

1

3. Defendant Louis Scowden is and was at all times mentioned a police officer employed by the Lee County Florida Sheriff Department.

## JURSIDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States and is brought through 42 U.S.C. § 1983.

5. Subject-matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 because, as is shown more fully in this Complaint, Plaintiffs' claims arise under the Constitution and laws of the United States.

6. Venue is proper in the United States District Court for the Middle District of Florida pursuant to both 28 U.S.C. § 1391(b)(1) and (2). Specifically, venue is proper under 28 U.S.C. § 1391(b)(1) because all of the events and omissions alleged herein occurred in Ft. Myers, Florida. Venue is also proper under 28 U.S.C. § 1391(b)(2) because at the time of the events and omissions giving rise to this litigation, all of the Defendants resided in Ft. Myers, Florida.

## RECITATION OF FACTS

7. On April 25th, 2025 a resident at 6030, unit 401, Johnathan's Bay Circle, Ft. Meyers, Florida called 911 to report that someone was in the unit above her and "pumping noise into her house."

8. This caller (herein after "Caller"), clearly an elderly woman, hardly able to speak at first, reported that since before 10:00PM someone had been making noise in the unit above her.

9. The Caller reported that someone was in the unit above her, which was "either unit 402 or 400", and the unit was supposed to be empty because the neighbors that lived there were on vacation. Because of this, the Caller posited that someone had broken into the apartment unit above hers.

10. The Caller also reported that she was on medication and that the "noise" might have started even earlier than 10:00PM, but she wasn't sure because she had been "sleeping all night."

11. The Caller also informed dispatch that she was not sure if anyone was in the unit above her.

12. This call from the Caller was made some time after midnight on April 25th, 2025.

13. At approximately 12:30 AM, Deputy Perez arrived at 6030 Johnathan's Bay Circle. 6030 is a building that is comprised of 10 condos, each with its own front door and garage.

14. The entry into each unit is separate and not joined by a common hallway.

15. Plaintiff Ellis Athanas lives in unit 502, which is neither next to or above the Caller's unit.

16. Each unit is clearly labeled with its unique unit number on the outside, visible from the well-lit street.

17. Jonathan's Bay Circle is a gated community with 24 hour gate surveillance and a guard house.

18. Upon arrival, Perez apparently noticed that Mr. Athanas's garage door was open.  Mr. Athanas's open garage door was clearly marked as Unit 502.

19. Perez proceeded into Mr. Athanas's garage, and opened the interior door of the garage, briefly stepping inside before closing it and exiting the garage.

20. Perez then walked around to Mr. Athanas's front door, which he opened and yelled into "sheriff's office, if anyone is here make yourself known."  No one responded.

21. Perez then closed the front door and walked around to the back of building 6030.

22. Perez then opened the door to the enclosed patio of Unit 501, walked across the enclosed patio and attempted to open the interior patio door, which was locked.

23. Perez then walked back around to the front of the building, back into Mr. Athanas's garage and relayed to dispatch the plate number on Mr. Athanas's car that was parked in his garage.

24. Perez then exited the garage to wait for backup, standing for nearly 7 minutes directly under and facing the sign designating Mr. Athanas's unit number, Unit 502.

25. Approximately 15 minutes after Perez's arrival at building 6030, Deputy Scowden arrived.

26. During this entire 15 minute time period, no lights came on, no persons were visible, and no strange noises were audible anywhere around building 6030. During Perez's presence at building 6030, nothing suggested that a burglary was in progress or had recently taken place.

27. Perez observed no signs of forced entry, destroyed property, or anything amiss. Perez did not observe any people, did not knock on any doors, and did not attempt to speak with the Caller who was known to live in Unit 401.

28. In fact, the entirety of Perez's investigation was focused on Unit 502, where Mr. Athanas and his two young daughters live, and which was unequivocally not the unit the Caller reported as the unit "pumping noise into her house" nearly 3 hours earlier.

29. When Scowden arrived, Perez told him "everything was unlocked, everything is straightforward." Perez and Scowden then drew their guns and entered into Mr. Athanas's house through the front door.

30. Upon storming into his house with their guns drawn and brandished at him, Mr. Athanas exited his bedroom in his underwear.

31. Mr. Athanas was then grilled about his permission to live there and about the ownership of his car that was parked in his garage.

32. Mr. Athanas repeatedly informed the officers that his two young daughters were in the house.

33. Mr. Athanas also informed the officers that he regularly leaves his doors unlocked and garage door open, as it is a "secure gated community."

34. No warrant existed for the officers to enter any unit of building 6030, much less Mr. Athanas's unit, which was not the unit reported by the Caller.

35. Nothing on scene or relayed by the Caller indicated that a burglary was in progress or had just concluded by the time Deputies Scowden and Perez arrived at Mr. Athanas's property, particularly given the Caller's statement that the noise began at least 3 hours prior to their arrival.

36. Mr. Athanas experienced great fear and trauma as the Defendants entered into his home, without a warrant or cause, where he and his young daughters slept.

## FIRST CLAIM FOR RELIEF

## WARANTLESS ENTRY AND SEARCH

## 4th Amendment to the U.S. Constitution, pursuant to 42 U.S.C. §1983

(against Defendant Perez and Scowden)

37. Plaintiff hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

38. Plaintiff brings this count against Defendants for the unlawful entry and search of his house.

39. The 4th Amendment of the United States Constitution prohibits unreasonable searches and seizures, as occurred here. Defendants did not have a warrant to enter or search Plaintiff's house, yet they did so anyway.

40. Additionally, no exception to the warrant requirement existed here. The Defendant officers entered and searched the wrong unit, Mr. Athanas's. The Caller reported the "noises" coming from the unit above her, which she specifically stated was either 402 or 400. Mr. Athanas lives in Unit 502, the placard for which was clearly marked and illuminated.

41. Further, nothing on scene or reported by the caller indicated that a burglary was in progress or had just finished, as the noises she reported started at least 3 hours prior to the Defendants' arrival. It is inherently unreasonable to assume that a residential burglary would last for more than 3 hours. Likewise, nothing observed by Perez on scene would indicate that a burglary had even happened. Assuming that an open garage door, in a secure and gated community was a sign of a recent burglary, of a unit not the subject of the original 911 call, is inherently unreasonable.

42. This conduct resulted in the unconstitutional search and seizure of Plaintiffs property, and directly and proximately caused him tremendous trauma and emotional distress.

WHEREFORE, Plaintiff prays for a judgment against Defendants for such sum that will fairly and adequately compensate Plaintiff for his damages, injunctive

relief, punitive damages, and for such other and further relief as the Court deems just and proper under the circumstances, and for his attorneys fees, costs incurred and expended.

Plaintiff requests a jury trial.

/s/ Kevin Mehr
**KEVIN MEHR, Colorado Bar #49108**
Mehr Jolly PLLC
3107 W. Colorado Ave.
#184
Colorado Springs, CO 80904
719-315-4606
Kevin.mehr@mehrlawcolorado.com

/s/Tyler Jolly
**TYLER JOLLY, Colorado Bar #52361**
Mehr Jolly, PLLC
3107 W. Colorado Ave.
#184
Colorado Springs, CO 80904
719-315-4606
Tyler@jollylawcolorado.com

Dated: September 4, 2025