UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELLIS ATHANAS,

      Plaintiff,

v.                             Case No.:  2:25-cv-822-SPC-KRH

OFFICER ALEJANDRO PEREZ, a
Lee County Sheriff Deputy, in his
individual capacity,

      Defendant.

## OPINION AND ORDER

Before the Court is Defendant Deputy Alejandro Perez's motion to dismiss.  (Doc. 18).  Plaintiff Ellis Athanas responded (Doc. 23), and Deputy Perez replied.  (Doc. 31).  For the below reasons, the Court grants the motion.

## Background

This is civil rights action based on Deputy Perez's warrantless entry into Plaintiff's home.[1]  Shortly after midnight on April 25, 2025, a resident at 6030 Jonathan's Bay Circle in Fort Myers, Florida, called 911.  The caller told the

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff.  *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).  In support of his motion, Deputy Perez provides audio and body-worn camera footage of the events alleged in Plaintiff's complaint.  (Docs. 18-1, 18-2, 18-3, 20).  The Court may consider these exhibits at the motion to dismiss stage.  *See, e.g.*, *Swinford v. Santos*, 121 F.4th 179, 186–88 (11th Cir. 2024) (finding that a district court properly considered "the defendants' body camera footage when ruling on the motion to dismiss"), *cert. denied*, 146 S. Ct. 204 (2025).

dispatcher that "[s]omebody has broken into my neighbor's house" and that she heard noise coming from her neighbor's house.[2] (Doc. 18-1 at 0:10–0:18). The caller lived in unit 401 and stated that the noise was coming from "whoever is in the upstairs -- I don't know whether it's 402 or 400. Probably 402." (*Id.* at 0:34–0:52). The caller said her neighbors were on vacation, and no one was supposed to be home. (*Id.* at 0:55–1:02). The dispatcher attempted to confirm whether the unit above 401 was the source of the noise the caller heard. The caller answered, "[y]eah, well next to it, I guess. I don't know if it's upstairs or downstairs." (*Id.* 1:07–1:18). The dispatcher assured her that an officer would come to the area. (*Id.* at 1:18–1:30).

Shortly after 12:30 a.m., Deputy Perez arrived at the location traced from the 911 call. He walked toward a house with an open garage door, and a white vehicle was backed into the garage. (Doc. 18-2 at 0:31–0:41). The number "6030" appeared prominently above the garage, but the unit number was not visible. (*Id.* at 0:44). Deputy Perez shone his flashlight into the garage and approached a door leading to the interior of the house. (*Id.* at 0:50–59). He tried the doorknob and found the door unlocked. (*Id.* at 1:00–1:10). Deputy Perez did not enter the home, turned around, and reported his observations to

---

[2] Deputy Perez filed the physical flash drives of the audio and video exhibits with the Court. (Doc. 20). For ease of reference, the Court refers to the exhibits by their corresponding cover pages included with Defendant's motion. (Docs. 18-1, 18-2, 18-3).

dispatch. (*Id.* at 1:11–1:25). He walked around to the front door of the house and observed that it was unlocked as well. (*Id.* at 1:40–1:55). No unit number is visible by the front door in the video.

Deputy Perez opened the front door and shone his flashlight inside, revealing a staircase leading up to what appeared to be a unit. (Doc. 18-2 at 1:58). While still standing outside the front door, Deputy Perez shouted, "Sheriff's Office!" (*Id.* at 1:55–1:58). After waiting about fifteen seconds with no response, he again shouted, "Sheriff's Office, anybody here make yourself known!" (*Id.* at 1:58–2:17). No response came again, so Deputy Perez rang the doorbell. (*Id.* at 2:18–2:24). He waited by the open front door for about thirty seconds but received no response from anyone inside the house. (*Id.* at 2:25–3:12).

Deputy Perez closed the front door and walked around to the back of the house. (*Id.* at 3:13–4:00). He approached a porch and found the sliding glass door leading inside locked.[3] (*Id.* at 4:00–4:16). He returned to the front of the garage and ran the white car's license plate. (*Id.* at 5:25–5:50). He then waited for backup to arrive while monitoring the two unlocked doors for further activity. (*Id.* at 5:50–14:24). Once Sergeant Scowden arrived, Deputy Perez

---

[3] Plaintiff later told Deputy Perez that the back porch is not part of his unit. (Doc. 18-2 at 21:20–21:30).

recounted his observations, and both officers then walked toward the front door.[4]

Deputy Perez opened the unlocked front door.  As he stepped inside, he shouted, "Sheriff's Office, anybody here make yourself known!"  (Doc. 18-2 at 14:45–14:51).  Sergeant Scowden followed behind Deputy Perez.  Before going up the staircase, Deputy Perez announced "Sheriff's Office" again.  (*Id.* at 14:51–14:56).  This time, an unknown person (Plaintiff) responded "what?" from upstairs, and Perez announced, "Sheriff's Office" again in response.  (*Id.* at 14:58–15:00).  Deputy Perez quickly followed up by stating, "You're not in trouble, who's here?"  (*Id.* at 15:00–15:03).  Plaintiff asked, "what's going on?"  (*Id.* at 15:03–15:05).  Deputy Perez, still at the bottom of the staircase, asked the unknown person to "come out slowly."[5]  (*Id.* at 15:06–15:07).  Plaintiff identified himself by his first name and explained that he lived in the unit with his two daughters.  (*Id.* at 15:07–15:16).  Deputy Perez informed Plaintiff that someone reported a break-in and that he and Sergeant Scowden "gotta figure out what's going on."  (*Id.* at 15:18–15:22).

---

[4] Deputy Perez also attaches Sergeant Scowden's body camera footage to the motion to dismiss.  (Doc. 18-3).  The Court agrees with Deputy Perez that the footage from the two body-worn cameras are substantially similar.  (Doc. 18 at 5 n.2).

[5] Plaintiff's counsel contends that the officers "interrogated [Plaintiff] at gun point."  (Doc. 23 at 3).  The videos contradict that statement.  While it appears both officers drew their firearms as they entered the home (Doc. 18-3 at 0:49–1:15), neither video shows that they pointed guns at Plaintiff during the encounter.  In fact, the three men engaged in a calm discussion immediately after Plaintiff made his presence known.  The Court rejects counsel's rank distortion of the facts.

At Sergeant Scowden's direction, Plaintiff came downstairs to discuss the situation.   Sergeant Scowden asked Plaintiff whether he had any identification to confirm that he lived at the home.  (Doc. 18-2 at 15:35–15:38). Plaintiff responded, "sure do . . . let me go get it, or come with me."  (*Id.* at 15:35–15:41).  The three of them went upstairs and continued the discussion.

After Plaintiff gave the officers his ID, they confirmed that he had rented the white car in the garage from a car rental company.  (*Id.* at 16:15–16:54). Plaintiff said that his neighbors "next door . . . down below" were gone.  (*Id.* at 17:58–18:03).  Deputy Perez informed Plaintiff that the address reported by the 911 caller matched the number "6030" above the open garage door.  (*Id.* at 17:43–18:12).  Plaintiff asked to clarify, "6030 what unit? . . . [because] this is 502."  (*Id.* at 18:13–18:20).  The officers went outside to find the caller, during which time Plaintiff explained that all the units on the street are designated "6030."  (*Id.* at 19:00–19:25).  Deputy Perez clarified again that he investigated Plaintiff's unit because the address 6030 matched what the caller said, the garage door was left open, and the doors were unlocked.  (*Id.* at 18:38–20:15).

With Plaintiff's assistance, the officers located the caller's unit (*id.* at 24:02–24:29), which was on the bottom floor of the house next to the one containing Plaintiff's unit.  The officers spoke with the caller about her report. (*Id.* at 24:50–26:00).  They then checked the neighboring upstairs unit and found the front door dead-bolted.  (*Id.* at 26:00–26:32).  The neighbor answered

the door, stated she lives in the unit, and that the caller has made similar complaints to the sheriff's office about twenty times. (*Id.* at 27:17–28:00). Deputy Perez returned to the caller's unit to explain the situation. (*Id.* at 28:00–29:10). After doing so, the officers left the scene.

Plaintiff sues Deputy Perez under 42 U.S.C. § 1983 for entering his home without a warrant.[6] Deputy Perez moves to dismiss the complaint, arguing the claim is barred by qualified immunity.

## Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," are not enough. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a

---

[6] Plaintiff also sued Sergeant Scowden but dismissed that claim without prejudice. (Doc. 16).

6

defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

The Court may consider the audio and video exhibits Deputy Perez attaches to his motion. *See supra*, 1 n.1; *see also Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020) (finding that video footage may be considered in ruling on a motion to dismiss based on the incorporation by reference doctrine). Where a video in evidence "obviously contradicts [a plaintiff's] version of the facts, [a court] accept[s] the video's depiction instead of [the plaintiff's] account." *Id.*

## Analysis

Deputy Perez argues that Plaintiff's Section 1983 claim is barred by qualified immunity. For the reasons below, the Court agrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (internal quotation marks and citation omitted). "When a court concludes the defendant was

7

engaged in a discretionary function, 'the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.'" *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)).

Deputy Perez acted within the scope of his discretionary authority as a police officer. *See, e.g.*, *Nigro v. Carrasquillo*, 152 F. Supp. 3d 1364, 1368 (S.D. Fla. 2015) ("Investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers." (quotation omitted)). Therefore, Plaintiff must show that qualified immunity is inapplicable.

"To overcome qualified immunity, the plaintiff must show both that (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."[7] *Crider v. Williams*, No. 21-13797, 2022 WL 3867541, at *5 (11th Cir. Aug. 30, 2022) (citing *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1126 (11th Cir. 2021)). Plaintiff fails to satisfy both prongs of the analysis.

First, Deputy Perez's actions did not violate the Fourth Amendment. While police officers ordinarily need a warrant to enter a home, *see Payton v. New York*, 445 U.S. 573, 586 (1980), that rule is "subject to several exceptions."

---

[7] The Court has discretion to analyze the second step of the qualified immunity analysis first. *See Pearson*, 555 U.S. at 239.

8

*Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Pertinent here, "[o]ne such exception is that the police may enter a private premises and conduct a search if 'exigent circumstances' mandate immediate action." *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (citation omitted). Exigent circumstances exist "when there is compelling need for official action and no time to secure a warrant." *Id*. (internal citation and quotation omitted).

"[I]f police have probable cause to suspect a residential burglary—whether they believe the crime is currently afoot or has recently concluded—they may, without further justification, conduct a brief warrantless search of the home to look for suspects and potential victims." *Montanez v. Carvajal*, 889 F.3d 1202, 1208–09 (11th Cir. 2018). "Probable cause requires only a probability . . . of criminal activity, not an actual showing of such activity." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (quotation omitted); *see also Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) ("Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'") (quoting *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990)).

Deputy Perez had probable cause to suspect a burglary at Plaintiff's unit. The officers received a 911 call after midnight from a resident reporting that someone had broken into her neighbor's house. While the caller sounded certain a crime was being committed, she gave an uncertain description of the

9

unit's location.  (Doc. 18-1 at 0:34–1:18).  Deputy Perez arrived at the location traced from the 911 call shortly after the call came in.  He observed the number "6030" above an open garage door, which matched the address the caller provided.  No other garage doors in the vicinity were open, and the numbers of the respective units were not visible at any point in the body camera footage.  The interior garage door and the front door were unlocked.  Deputy Perez loudly announced his presence twice at the front door and rang the doorbell with no response.  He then discovered that the car in the garage was a rental.  Deputy Perez explained at the scene that the officers saw the number "6030," and an open garage door, and observed unlocked doors, "so that's the first house we're gonna check."  (*Id.* at 19:23–19:32).   These facts collectively support a reasonable "probability" of a burglary either in progress or that recently concluded.  *See Case*, 555 F.3d at 1327.

Plaintiff offers a scattershot of arguments suggesting that Deputy Perez lacked probable cause to suspect that a burglary was occurring or had occurred at his unit. (Doc. 23).  Plaintiff's arguments merit little analysis, but the Court does address one point.  Plaintiff argues that Deputy Perez's decision to wait several minutes for Sergeant Scowden to arrive before entering the home demonstrates a lack of exigency. (*Id.* at 14).  Hardly.  Deputy Perez's decision to monitor the house and wait for back-up before potentially entering a dangerous situation is not unreasonable.  If anything, it shows that Deputy

10

Perez truly suspected a burglary and chose to wait for back-up rather than charging into an unknown situation alone. *Cf. Montanez*, 889 F.3d at 1209 (noting "a police officer who happens upon a suspected burglary . . . will rarely know (or have any real way of knowing)" all the relevant facts in the moment).

Even assuming Plaintiff had alleged a constitutional violation, he fails to establish that the right was clearly established. "In determining [if] a right is clearly established, the . . . dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014) (quotation omitted). Courts may not "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (citations omitted); *see also City of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.").

Plaintiff fails to establish that Deputy Perez violated clearly established law. As *Montanez* makes clear, distinguishing cases that authorize warrantless entries is insufficient to show a defendant violated clearly established law holding that a warrantless entry was improper. *See* 889 F.3d at 1212 n.7. Plaintiff provides no authority finding a Fourth Amendment

11

violation based on a similar set of facts.  So, Deputy Perez is entitled to qualified immunity on that basis as well.

It is unfortunate that Deputy Perez woke Plaintiff late at night for what was ultimately a false alarm.  But rather than simply pick up and move on, Plaintiff quite literally "made a federal case out of" the events.  *Kantrow v. Celebrity Cruises Inc.*, 533 F. Supp. 3d 1203, 1222 (S.D. Fla. 2021) (cleaned up).  While it is his right to file suit, his claim is barred by qualified immunity.

Accordingly, it is

**ORDERED:**

1. Defendant Deputy Alejandro Perez's motion to dismiss (Doc. 18) is **GRANTED**.

2. Plaintiff's Complaint (Doc. 1) is **DISMISSED with prejudice**.

3. The Clerk is **DIRECTED** to terminate all deadlines, deny any pending motions as moot, enter judgment for Defendant, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 25, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

12